United States District Court
Southern District of Texas
**ENTERED**
April 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERIC WAYNE LLOYD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00305 |
| | § | |
| SERGEANT VILLARREAL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Eric Wayne Lloyd, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated, for purposes of screening: (1) Fourth Amendment excessive force claims against Sergeant Villarreal and Deputy Meakins in their individual capacities; and (2) a deliberate indifference claim against Jail Administrator Michael Page in his individual capacity. Accordingly, the undersigned recommends that these claims be **RETAINED**.  The undersigned will order service on Defendants Villarreal, Meakins, and Page.

For the reasons set forth below, the undersigned recommends further that: (1) Plaintiff's claims against Defendants in their official capacities be DISMISSED; and (2) Plaintiff's remaining claim against Jail Administrator Page for verbal abuse and harassment be DISMISSED with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and recommendations on dispositive motions, pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND

Plaintiff is currently confined at the Bee County Jail in Beeville, Texas. Plaintiff's allegations arise in connection with events allegedly occurring on or about February 14, 2020, during the course of his arrest and after he was taken into custody at the Bee County Jail.

In this action, Plaintiff sues the following defendants: (1) Sergeant Villarreal; (2) Deputy Meakins; and (3) Bee County Jail Administrator Michael Page. Plaintiff generally asserts claims of excessive force and deliberate indifference to his health. Plaintiff sues Defendants in their individual and official capacities. (Doc. No. 13, pp. 56, 59, 61-62.) Plaintiff seeks declaratory and monetary relief. (Doc. No. 1, p. 5; Doc. No. 13, pp. 62-63.)

On February 24, 2022, the undersigned conducted a *Spears*[1] hearing, in which Plaintiff was given an opportunity to explain his claims. Plaintiff made the following representations either in his complaint (Doc. No. 1) or at the *Spears* hearing. The undersigned accepts Plaintiff's representations as true, for purposes of determining whether Plaintiff has stated viable claims.

At the time of the *Spears* hearing, Plaintiff was 50 years old. (Doc. No. 13, p. 6.) He is 5'8" tall and weighs 165 pounds. *Id.* at 7. Plaintiff was convicted in in 2004 of possession of a controlled substance and was sentenced to 16 years in prison. *Id.* at 8. Plaintiff eventually was granted parole on this conviction. *Id.* Plaintiff is currently confined at the Bee County Jail on

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

two counts of aggravated assault on a public servant, one count of evading arrest and detention in a motor vehicle, and one count of possessing a firearm as a convicted felon. (Doc. No. 13, pp. 7-8, 10.) Plaintiff's pending charges arise in connection with events that occurred on or about February 14, 2020. *Id.* at 10, 12. As a result of the pending charges, Plaintiff's parole was revoked. *Id.* at 9, 12.

Plaintiff acknowledges that he was driving while intoxicated in the early morning hours of February 14, 2020. *Id.* at 13. At 3:30 a.m., Deputy Meakins attempted a traffic stop on Plaintiff as he was driving back to Corpus Christi from San Antonio. *Id.* at 13-14. Deputy Meakins stopped Plaintiff because the corner of his paper license plate was flapping on his vehicle. (Doc. No. 1-4, p. 4; Doc. No. 13, p. 55.) Plaintiff responded by speeding away in his vehicle, a 2020 Ford Mustang GT. (Doc. No. 1-4, p. 4; Doc. No. 13, pp. 15-16.)

As Plaintiff was evading the initial traffic stop, Plaintiff asked a female passenger to exit the car he was driving. (Doc. No. 13, p. 15.) The female passenger complied at some point in the getaway and exited the car . *Id.* After escaping through a neighborhood, Plaintiff parked his car in a dead end and passed out from intoxication. *Id.* at 16-17. Plaintiff did have any weapons on his person at this point in the morning. *Id.* at 17. Plaintiff had a pistol in the trunk of his car. *Id.*

When Plaintiff awakened after passing out, two police vehicles were only "inches from" Plaintiff. *Id.* at 18. Deputy Meakins was in one of the vehicles, and Sgt. Villareal was in the other police vehicle. *Id.* at 17. Plaintiff started his car and tried to evade the police again. *Id.* at 18. Plaintiff's car eventually got stuck in a fence after the deputies attempted to ram Plaintiff's vehicle. (Doc. No. 1-4, p. 4; Doc. No. 13, pp. 18-20.) At some point, Plaintiff gained access to

his backpack in the trunk, which contained the pistol. (Doc. No. 13, p. 20.) Plaintiff placed the backpack on the passenger side of his car. *Id.*

The pistol remained in the backpack and was not on Plaintiff's person as he jumped out of his car with his cell phone in his hand. (Doc. No. 13, pp. 20-21.) Plaintiff raised both of his arms in the air as the two police vehicles approached. *Id.* at 20. Plaintiff became scared, however, and got back into his car. *Id.* Plaintiff attempted to drive away, but his car remained stuck in the fence. *Id.* at 21.

Sgt. Villarreal left his vehicle with a shot gun and fired it twice into the air. *Id.* at 22. Sgt. Villarreal instructed Plaintiff to exit his car. *Id.* Plaintiff responded that he would not exit his car while Sgt. Villarreal continued to shoot. *Id.* Plaintiff states that he posed no threat to the officers at this time. (Doc. No. 1-4, p. 5.) Deputy Meakins and Sgt. Villarreal, who were standing side by side and five feet away from Plaintiff's car, immediately opened fire by shooting several times into Plaintiff's car. (Doc. No. 13, p. 22.) Sgt. Villarreal, according to Plaintiff, shot into the driver door four times while Deputy Meakins shot twice into the back quarter panel of the car. *Id.* Deputy Meakins also shot at the tire once before shooting inside the car three more times. *Id.*

Plaintiff was struck in the hand by one of the shots. *Id.* at 23. Plaintiff did not know which officer had fired the bullet that hit him. *Id.* Plaintiff states that his hand was badly injured. *Id.* at 23-24.

Because Sgt. Villarreal and Deputy Meakins were shooting at the gas tank, the car caught fire, and so the officers backed away. *Id.* at 24-25. Plaintiff gained access to his pistol, shot out the passenger side window, and crawled out the window. *Id.* at 25. Plaintiff ran as fast as he could, to get away. *Id.* Plaintiff's hand was bleeding badly as he fled on foot. *Id.* at 26.

Plaintiff states that he stopped running, curled up next to a horse trailer in a countryside neighborhood, and again passed out. *Id.*

Plaintiff woke up around 11:30 a.m. and texted two friends living in Corpus Christi for help. (Doc. No. 1-4, p. 4; Doc. No. 13, pp. 26-27.) Both of Plaintiff's friends, Bethany Richardson and Haven Cool, arrived in a Nissan Xterra to pick up Plaintiff. (Doc. No. 13, p. 28.) After Plaintiff and his two friends drove onto Highway 59, their vehicle was immediately surrounded by police cars. *Id.* at 28-29. Plaintiff instructed the driver to pull over. *Id.* at 29.

Sgt. Villarreal was in the police vehicle immediately behind the Nissan Xterra. *Id.* Plaintiff did not know whether Deputy Meakins was part of the law enforcement group that had surrounded the vehicle. *Id.* at 30. Plaintiff exited the passenger side and headed to the front of the vehicle. *Id.* Plaintiff could not hear any officer's command for Plaintiff to put his hands in the air. *Id.* at 32. Sgt. Villarreal shot Plaintiff two times with "chemical agent gas balls" to the back of his head. *Id.* at 31-33.

After being shot with the gas balls, Plaintiff states that he fell to the ground on his stomach, in excruciating pain. *Id.* at 33. Sgt. Villarreal placed his knee on Plaintiff's back and handcuffed Plaintiff's left hand. *Id.* A K-9 unit dog then attacked Plaintiff by biting his right leg. *Id.* at 33-34. While all these events were happening, Sgt. Villarreal did not issue any verbal orders or instructions to Plaintiff or with respect to the K-9 unit dog. *Id.* at 34-35. Plaintiff did not provide any resistance, as he had already been incapacitated by the gas balls. *Id.* at 35-36.

Two other officers joined Sgt. Villarreal to handcuff and fully restrain Plaintiff. (Doc. No. 1-4, p. 4; Doc. No. 13, p. 36.) Plaintiff was unable to identify these officers. (Doc. No. 13, p. 36.) While fully restrained, Sgt. Villarreal and the two officers watched as the K-9 unit dog

continued to bite Plaintiff and tear at his leg for 41 seconds. (Doc. No. 13, pp. 36, 38.) According to Plaintiff, the K-9 unit dog "tore up" his leg. *Id.* at 37.

After being taken into custody, Plaintiff was transported immediately by ambulance to the hospital. (Doc. No. 13, pp. 37-39.) Plaintiff could not remember which officers ordered Plaintiff to be transported to the hospital. *Id.* at 39. Plaintiff also did not know which officers accompanied him to the hospital. *Id.* None of the officers prevented Plaintiff from receiving treatment at the hospital. *Id.* at 40-41. Two nurses at the hospital attempted to start an IV on Plaintiff, but to no avail. *Id.* at 40. Plaintiff was given a tetanus shot. *Id.* at 43. Plaintiff states that after he complained about being hurt by the medical staff, he was provided no additional treatment on the basis that he had refused treatment. *Id.* at 41-42.

A member of the hospital staff issued Plaintiff a wheelchair. *Id.* at 42. Plaintiff was released from the hospital and was taken next door to the Bee County Jail and placed in a holding cell. *Id.* at 42-45. Plaintiff was assisted by two officers while he was in the wheelchair. *Id.* at 44. Plaintiff subsequently was taken in his wheelchair to the Bee County detectives' office where he was interviewed by unknown detectives. *Id.* at 45-46.

Plaintiff states that after the interview, two officers were pushing Plaintiff in his wheelchair when they encountered Jail Administrator Page. *Id.* at 46. Jail Administrator Page ordered the two officers to "take the wheelchair away from that SOB." *Id.* at 47. Plaintiff fell to the ground after the wheelchair was taken away from him and was forced to crawl six or seven feet into the holding cell. *Id.* Jail Administrator Page, according to Plaintiff, further instructed the officers not to assist Plaintiff in any fashion. *Id.* Plaintiff's injuries and pain were exacerbated by being forced to crawl into the cell. *Id.* at 50.

Plaintiff testified at the *Spears* hearing that it was plainly evident to all the officials at the Bee County Jail that he had just been released from the hospital and required the use of a wheelchair. *Id.* Plaintiff states that he was in serious pain at that time, as his injuries from the events earlier that day ultimately required him to go through four months of wound care and three 15-day rounds of antibiotic treatment. (Doc. No. 13, pp. 48-49.)

Plaintiff also states that he was humiliated as a result of Jail Administrator Page's taking his wheelchair away. *Id.* at 51. All of the jail staff, including Jail Administrator Page, referred to Plaintiff as "dog boy" for eight months after being taken into custody. (Doc. No. 1-4, p. 5; Doc. No. 13, p. 51.) Plaintiff, however, did not know whether Jail Administrator Page directed jail staff to call Plaintiff "dog boy." (Doc. No. 13, p. 52.)

### III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if the defendant misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. *Official capacity claims.*

Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009)(internal quotations and citation omitted). Thus, to the extent Plaintiff seeks to sue Defendants in their official capacities, it is effectively a suit against the officials' office, Bee County. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Even if the Court were to substitute Bee County on behalf of Defendants in their official capacities, Plaintiff would not be able to state a § 1983 claim against Bee County. A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *see also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010)(noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff fails to allege that any of the named Defendants are policymakers in Bee County or that an official county policy or practice was the "moving force" behind the violations of Plaintiff's constitutional rights. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

### B. Excessive force.

The Fourth Amendment protects a person from being subjected to excessive force during an arrest. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). As a general guideline, "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). To state a claim for excessive force during the course of an arrest, a plaintiff "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quotations and citation omitted).

"[T]he objective reasonableness of the amount of force used turns on the facts and the circumstances for each incident." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 336 (5th Cir. 2008) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)). The Fourth Amendment inquiry is an objective one that is determined "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Hale v. City of Biloxi, Mississippi*, 731 F. App'x 259, 262 (5th Cir. 2018)(quoting *Graham*, 490 U.S. at 396-97); *see also Lombardo v. City of St. Louis, Mo.*, 141 S. Ct. 2239, 2241 (2021)(*per curiam*)(a reviewing court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them'")(quoting *Graham*, 490 U.S. at 397).

On the issue of objective reasonableness, courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490

U.S. at 396. "Deadly force, a subset of excessive force, violates the Fourth Amendment unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Hudspeth*, 270 F. App'x at 336 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

"In evaluating excessive force claims, courts may look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006)(quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "Thus, 'the extent of the injury inflicted may be considered in determining whether the officers used excessive force.'" *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009)(internal quotations and citations omitted). Although a plaintiff need not demonstrate a "significant injury," injuries such as bruises, abrasions, or contusions are considered *de minimis* and are insufficient to demonstrate that excessive force was used. *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir 2018)(citations omitted); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016)(citing cases).

Plaintiff claims that Deputy Meakins and Sgt. Villarreal subjected him to excessive use of force at the time of his early morning traffic stop on February 14, 2020, when they opened fire on him at point-blank range while Plaintiff was in his vehicle. Plaintiff alleges that he posed no threat to the officers at the time they started shooting into his vehicle. (Doc. No. 1-4, p. 5.) As a result of the actions of Sgt. Villarreal and Deputy Meakins, Plaintiff alleges that suffered a gunshot wound to his right hand.

Plaintiff further claims that Sgt. Villarreal subjected him to excessive force at the time police officers surrounded Plaintiff on Highway 59 when he: (1) shot Plaintiff twice in the back

of the head with chemical agent gas balls; and (2) unleashed a K-9 unit dog upon Plaintiff. Plaintiff alleges that, at the time he exited the Nissan Xterra and headed to the front of the vehicle in a non-threatening manner, he could not hear any officer's command for Plaintiff to put his hands in the air before he was struck by the chemical agents. (Doc. No. 13, p. 32.) Plaintiff further alleges that he became totally incapacitated once the chemical agents were deployed and before the K-9 unit attacked him. (Doc. No. 13, pp. 35-36.) As a result of Sgt. Villarreal's actions, Plaintiff alleges that he suffered excruciating pain from the deployment of the chemical gas balls and extensive leg injuries from the K-9 unit dog biting and tearing at his leg.

Plaintiff's allegations, accepted as true, are sufficient at this early stage in the case to state Fourth Amendment claims of excessive force against Sgt. Villarreal and Deputy Meakins. *See Peña*, 879 F.3d at 619. *See also Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016)(recognizing that an officer's conduct in "subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable"); *Ward v. Franciscy*, No. 1:10-CV-0429, 2011 WL 1526938, at *1-2 (N.D. Ind. Apr. 20, 2011)(prisoner stated Fourth Amendment excessive force claim when he alleged that an officer sprayed him with a chemical agent without proper justification during the course of his arrest); *Sheffield v. Lee*, No. 3:08-CV-1102-L, 2008 WL 4966624, at *3-4 (N.D. Tex. Nov. 18, 2008)(plaintiff sufficiently stated excessive force claim when he alleged that officer shot him four times during his arrest). Accordingly, the undersigned recommends that the Court retain Plaintiff's excessive force claims against Sgt. Villarreal and Deputy Meakins in their individual capacities.

### C. *Deliberate indifference.*

Liberally construed, Plaintiff asserts a deliberate indifference claim against Jail Administrator Page. Plaintiff testified at the *Spears* hearing that he has four state charges

presently pending in Bee County based on the events that occurred on February 14, 2020, and that his parole from a prior conviction was revoked based on the pending charges. (Doc. No. 13, pp. 7-12.) Plaintiff's allegations reflect, therefore, that he is currently confined at the Bee County as both a pretrial detainee and a post-trial convicted inmate.

The Fifth Circuit Court of Appeals has held that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). Following *Hare*, the Fifth Circuit further explained that "[w]hen the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Generally, acts committed with "deliberate indifference" in violation of the Eighth Amendment have both an objective component and a subjective component. *Id.* Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (Hanks, J.) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26,

2021)(citing *Farmer*, 511 U.S. at 840-41 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020)(quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough: the officials must have had actual knowledge of the substantial risk."). The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838.

Plaintiff's allegations reflect that: (1) Jail Administrator Page encountered Plaintiff at the Bee County Jail on February 14, 2020, the same day he was arrested and released from the hospital; (2) Jail Administrator Page was aware of the events that took place earlier that day in connection with Plaintiff's arrest, the reason for which Plaintiff was taken to the hospital, and the fact that Plaintiff had just been released from the hospital; (3) despite seeing two officers push Plaintiff in the wheelchair issued by the hospital, Jail Administrator Page ordered the officers to "take the wheelchair away from that SOB" and not to assist Plaintiff in any fashion; (4) Plaintiff fell to the ground after his wheelchair was taken away and was forced to crawl unassisted several feet to his holding cell; and (5) as a result of Jail Administrator Page's order, the injuries and pain suffered by Plaintiff earlier that day were exacerbated. (Doc. No. 13, pp. 46-51.)

Plaintiff's allegations, accepted as true, indicate that: (1) Jail Administrator Page's conduct may have exposed Plaintiff to a substantial risk of serious harm; and (2) he was aware of a serious risk of substantial harm to Plaintiff's health but disregarded such risk by causing his wheelchair to be taken away and forcing Plaintiff to crawl in his injured capacity on the floor. *See Stewart v. Livingston*, No. H-14-1483, 2014 WL 4975434, at *8 (S.D. Tex. Oct. 3, 2014) (Atlas, J.) (recognizing that custodial officials' conduct in forcibly removing inmate from his wheelchair or compelling inmate "to move himself without the use of a chair … might constitute a violation of [the inmate's] constitutional rights if the officials acted with full knowledge of his incapacities and acted with deliberate indifference to them"). Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against Jail Administrator Page be retained against him in his individual capacity.

### D.   *Verbal abuse and harassment.*

Plaintiff claims that Jail Administrator Page and his subordinate employees referred to Plaintiff as "dog boy" for eight months after being taken into custody. (Doc. No. 1-4, p. 5; Doc. No. 13, p. 51.) It is well-settled that harassing remarks or verbal abuse by prison staff to an inmate do not rise to the level of a constitutional violation. *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)(holding that "claims of verbal abuse are not actionable" constitutional claims); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)(citing *Bender v. Brumley*, 1 F.3d 271 (5th Cir. 1993))("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995)(concluding that verbal threats do not rise to the level of a constitutional violation); *Crawford v. Rostollan*, No. 5:19cv76, 2020 WL 4723547, at *4 (E.D. Tex. Apr. 27,

2020)(holding that claims of officials using threatening language against inmates or otherwise verbally abusing inmates do not state constitutional violations).

Thus, to the extent that Plaintiff complains about being referred to as "dog boy" by Jail Administrator Page and his staff, he has failed to state an actionable constitutional claim. The undersigned recommends, therefore, that this claim be dismissed as frivolous and/or for failure to state a claim.

## V. RECOMMENDATION

For the reasons stated above, Plaintiff has alleged sufficient facts that, if true, state: (1) Fourth Amendment excessive force claims against **Sergeant Villarreal and Deputy Meakins** in their individual capacities; and (2) a deliberate indifference claim against **Jail Administrator Michael Page** in his individual capacity. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to these defendants by separate order. The undersigned further recommends that: (1) Plaintiff's claims against **Defendants** in their official capacities be **DISMISSED**; and (2) Plaintiff's remaining claim against **Jail Administrator Page** for verbal abuse and harassment be **DISMISSED with prejudice** for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

## VI. NOTICE

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **14 days** after being served with a copy of this Memorandum and Recommendation, any party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions that are accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

SIGNED on April 6, 2022.

_____
MITCHEL NEUROCK
United States Magistrate Judge